UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

NICOLE MUTHARD,                          :
               Plaintiff,               :
                                :
       v.                              :      No. 5:23-cv-3387
                                :
PENNSYLVANIA LIQUOR CONTROL    :
BOARD, SEAN YINGLING, Individually,  :
and JOSEPH PUHALLA, in his Official   :
Capacity,                                 :
               Defendants.              :

_____

**O P I N I O N**
**Motion to Dismiss, ECF No. 10 - Granted**

**Joseph F. Leeson, Jr.**                                      **February 6, 2024**
**United States District Judge**

## I.      INTRODUCTION

After Nicole Muthard ("Muthard") worked for the Pennsylvania Liquor Control Board ("PLCB") as an assistant manager at a liquor store for more than seven years, a co-worker, Sean Yingling ("Yingling"), allegedly became obsessed with her after they met up socially on two occasions outside work hours. Despite Muthard informing him that she was not romantically interested in him, Yingling continuously attempted to communicate with Muthard about personal matters and the possibility of a romantic relationship. Muthard repeatedly rejected these attempts, which resulted in Yingling going out of his way to disrupt her in the workplace, acting aggressively towards her in the workplace, and speaking badly about her to others. Overall, Yingling's conduct made Muthard feel unsafe at work.

Muthard complained about Yingling's conduct to her general manager and Joseph Puhalla ("Puhalla"), her district manager. Puhalla informed Muthard that he believed she was being "petty," and he indicated he would take no action in response to her concerns. Muthard ultimately resigned from her managerial position due to Yingling's harassment and management's failure to respond to her concerns. She claims this constitutes a constructive discharge. She also alleges that Puhalla retaliated against her by making derogatory comments about her to her next employer, which caused her to lose pay, be relocated, and move to an inferior role.

Based on these allegations, Muthard asserts several claims against the PLCB and Puhalla (in his official capacity only), and one claim against Yingling for intentional infliction of emotional distress ("IIED"). Yingling has moved to have the Court dismiss this claim. For the following reasons, the Motion to Dismiss the IIED claim is granted.

## II.    BACKGROUND

The factual allegations, taken from Complaint, *see* ECF No. 1, are as follows:

Starting in April 20, 2015, Muthard worked full-time for the PLCB as an assistant manager of a liquor store located in Whitehall, Pennsylvania. *Id.* ¶¶ 14–15, 18. During her employment at this liquor store, George Parsons ("Parsons") was the general manager and Puhalla was the district manager. *Id.* ¶ 16–17.

In the first half of October 2022, Muthard twice met with Yingling, a clerk for PLCB, outside of work in a social capacity. *Id.* ¶ 21. The two meetings occurred approximately a week apart, lasted one to two hours, and consisted only of consuming some alcohol and conversing. *Id.* ¶¶ 22–24. Through these social interactions, Muthard was disinterested in a romantic relationship with Yingling. *Id.* ¶ 25. Yingling, on the other hand, became "dangerously obsessed" with her. *Id.* ¶ 26 (emphasis omitted).

From mid-October through November 2022, Yingling continually attempted to communicate with Muthard about personal matters and otherwise pursue a romantic relationship with her, despite her directly informing him that she was disinterested in such a relationship with him. *Id.* ¶¶ 27–30. Some of these communications consisted of text messages, and Muthard ultimately blocked Yingling on her phone after he did not comply with her requests to leave her alone and stop texting her. *Id.* ¶¶ 32–33. In November, Yingling's harassing actions toward Muthard included, *inter alia*,

> (a) continually muttering comments under his breath when he walked by [her]; (b) staring at [her] at times when he believed she was not looking; (c) intentionally walking by [her] unnecessarily grunting; (d) messing with the radio when [her] was adjusting it or turning something on; and (e) and intentionally trying to interfere with the calmness in the store by making problems with [her] or other employees.

*Id.* ¶ 39.

Then, from early November until late November 2022, Yingling began retaliating against Muthard while continuing to sexually harass her. *Id.* ¶¶ 35–39. On November 6, 2022, Yingling and Muthard were at a bar for a co-worker's retirement party. *Id.* ¶ 35. During this party, Yingling made derogatory comments about Muthard to other patrons at the bar, and he gave her the middle finger. *Id.* Despite expressing this hostility toward Muthard at the party, Yingling later left her a voicemail in which he, *inter alia*, (1) stated he cared about her, (2) "approv[ed]" if she "like[d]" someone other than him, (3) referenced "affairs of the heart," and (4) was "hurt . . . a lot" by whatever she did. *Id.*

Another alleged incident of retaliation occurred on November 16, 2022, when Yingling "acted in an explosive manner" toward Muthard after she had relocated products he had placed on the wrong shelf. *Id.* Later that day, Yingling approached Muthard while she was alone in a backroom, "aggressively cornered" her, and attempted to discuss the problems she had with him.

*Id.* Yingling's actions caused Muthard to fear for her safety. *Id.* Before matters could escalate further, a third-party security guard on the premises intervened and de-escalated the situation. *Id.* ¶¶ 36–37 & Ex. A, Decl. of Macey Turnicky.

Given Yingling's harassment, Muthard complained about him to Parsons and Puhalla in the first half of November 2022. *Id.* ¶ 41. She shared text messages and a voicemail she received from Yingling with them, and she also updated them about her concerns with him. *Id.* ¶ 42–43. Puhalla responded to Muthard's complaints by telling her he believed she was "being petty," and he encouraged her to get along with Yingling. *Id.* ¶ 47. He accused Muthard of causing the problem and asserted that she was mishandling her role as assistant manager. *Id.* ¶ 48. He also verbally disciplined her when she complained about Yingling to Parsons on Parsons' day off from work. *Id.* ¶ 50. Overall, Puhalla "said in no uncertain terms [that] nothing would be done about [Muthard's] concerns." *Id.* ¶ 49 (emphasis omitted).

Due to Yingling's harassment and Puhalla's unwillingness to address her concerns, Muthard told Puhalla that she was giving him her two weeks' notice. *Id.* ¶¶ 51–52. In response, Puhalla laughed at Muthard and "questioned why [she] would even give two weeks' notice if she left unsafe." *Id.* ¶ 53. A few days into her two-week notice period, Muthard offered to rescind her resignation if human resources would intervene and resolve her concerns. *Id.* ¶ 54. Puhalla rejected this request and told Muthard that she had already resigned. *Id.* ¶ 55. Ultimately, Muthard did not complete her two-week notice period because of "additional mistreatment by management and Yingling." *Id.* ¶ 56. She claims to have been constructively discharged on November 23, 2022. *Id.*

Following her constructive discharge, PLCB, through Puhalla, engaged in post-employment retaliation against her. *Id.* ¶ 59. Muthard obtained employment as a supervisor with a private security company which provided security at PLCB locations. *Id.* ¶ 60 & n.3. Although

the company placed Muthard at a PLCB location where she previously worked, Puhalla directed the company not to allow her to work at PLCB. *Id.* ¶ 61. Puhalla also made derogatory comments about Muthard to the company, which resulted in her removal from the location, a pay cut, and her placement in an "inferior role" at a non-PLCB location. *Id.* ¶ 62.

## III.    STANDARD OF REVIEW

When addressing a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted). The moving defendant bears the burden of proving that a

plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.   ANALYSIS

To allege a plausible claim for IIED, Muthard must allege conduct which (1) is extreme and outrageous, (2) is intentional or reckless, and (3) causes severe emotional distress. *See Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989) (explaining that IIED tort "had four elements: the conduct must be extreme and outrageous, it must be intentional or reckless, it must cause emotional distress, and the distress must be severe" (citing *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979) (en banc))); *see also Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000) (indicating that "the minimum elements necessary to sustain" an IIED claim are set forth in Restatement (Second) of Torts § 46)). When addressing a motion to dismiss an IIED claim, the

> "court must determine, as a matter of law, whether there is sufficient evidence for reasonable persons to find extreme or outrageous conduct." [*Madreperla v. Williard Co.*, 606 F. Supp. 874, 879–80 (E.D. Pa. 1985) (citing *Chuy*, 595 F.2d at 1273)]. The conduct must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Rinehimer v. Luzerne Cty. Cmty. Coll.*, 372 Pa. Super. 480, 494–95, 539 A.2d 1298, 1305 (1988); *see* Restatement (Second) of Torts § 46, comment d (1965).

*Jordan v. Pennsylvania State Univ.*, 276 A.3d 751, 775 (Pa. Super. 2022), *pet. for allowance of appeal denied*, 296 A.3d 1081 (Pa. 2023).

Regarding what constitutes "outrageous conduct" such conduct

is not well defined, as [the Pennsylvania] Supreme Court explained in *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988 (Pa. 1987).

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict

6

emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community...Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.[1]

The Court went on to say that "[t]he tort of intentional infliction of emotional distress differs from traditional intentional torts in an important respect: it provides no clear definition of the prohibited conduct."[2] So what exactly is outrageous conduct? "'The term outrageous is neither value free nor exacting. It does not objectively describe an act or series of acts; rather, it represents an evaluation of behavior.'"[3]

*Schweigart v. Schmalenberger*, No. 1226 MDA 2020, 2021 WL 2775910, at *12 (Pa. Super. July 2, 2021) (footnotes in original).[4]

In his Motion to Dismiss, Yingling argues that Muthard has failed to plead sufficient facts to plausibly show that his conduct was "extreme and outrageous" and that she suffered damages due to it. *See* Def.'s Mem. of Law in Supp. of Mot. to Dismiss Pl.'s Compl. at ECF pp. 5–7, ECF No. 10. The Court agrees.

As a general rule in the employment context,

["]sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress." [*Andrews v. City of Philadelphia*, 895 F.2d 1469, 1487 (3d Cir. 1990), *superseded in part by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072.] "The extra factor that is generally required is retaliation for turning down sexual propositions." *Id.* Although "retaliation is an important element, the Pennsylvania Supreme Court has stated that consideration of retaliation in the context of an IIED

---

[1]     *Kazatskv*, 527 A.2d at 991 (quoting Restatement (Second) of Torts § 46 cmt. D (1965)).

[2]     *Id.* (quoting Givelber, *The Right to Minimum Social Decency and the Limits of Evenhandedness: Intentional Infliction of Emotional Distress by Outrageous Conduct*, 82 Colum. L. Rev. 42, 52-53 (1982)).

[3]     *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. 1997).

[4]     The footnotes have been renumbered to correspond with the order of footnotes in this opinion.

claim 'is one of a number of factors to be used in assessing such a claim.'" [*Rorrer v. Cleveland Steel Container*, 712 F. Supp. 2d 422, 438 (E.D. Pa. 2010)] (quoting *Hoy*, 720 A.2d 745). "'By regarding retaliation as a weighty factor, but not a mandated factor, we allow for the rare case in which a victim of sexual harassment is subjected to blatantly abhorrent conduct, but in which no retaliatory action is taken.'" *Id.* at 438–39 (quoting *Hoy*, 720 A.2d 745).

*McCowan v. City of Philadelphia*, Civ. A. No. 19-3326, 2022 WL 758991, at *36 (E.D. Pa. Mar. 10, 2022).

Here, Muthard's allegations consist of Yingling (1) continuing to try to speak with her about personal matters and ask her out on a date despite her telling him that she was disinterested in a romantic relationship with him, (2) "engaging in near daily advances," (3) expressing that he loved her unconditionally, (4) mentioning that he might have sexual relations with another woman he was with, (5) making derogatory comments about her while at a party and giving her the middle finger, only to shortly thereafter leave her a voicemail in which he expresses care for her, (6) angrily confronting her about moving products he had set up on a shelf, (7) cornering her alone in a backroom where he raised his voice and attempted to discuss her problems with him, (8) muttering comments under his breath when he walked by her, (9) staring at her, (10) intentionally walking by her and unnecessarily grunting, (11) messing with the radio when she was adjusting it or turning on something, and (12) making problems with her and other employees in the store. Compl. ¶¶ 26–39. While these allegations, if proven, would seemingly constitute harassment, they do not come close to approaching the type of conduct which other courts still found **not** sufficiently extreme and outrageous enough to support an IIED claim. *See McCowan*, 2022 WL 758991, at *36 (describing cases); *see also Smith v. RB Distrib., Inc.*, 515 F. Supp. 3d 311, 319–20 (E.D. Pa. 2021) (describing decisions where IIED claims based on workplace behavior were permitted to proceed); *Hoy*, 720 A.2d at 754 (stating that only "the most clearly desperate and ultra extreme

conduct" supports IIED claim under Pennsylvania law).[5] Accordingly, the Court dismisses

Muthard's IIED claim.

---

[5]      While it was in the context of ruling on a motion for summary judgment, the *McCowan* Court explained the following while concluding that one of the named plaintiffs failed to put forth sufficient facts to sustain the "extreme and outrageous" conduct for an IIED claim:

> Here, Allen has put forth no evidence that any individual Defendant sexually propositioned her and retaliated against her when she turned him or her down. Indeed, Allen has put forth no evidence of sexual propositioning. *See Andrews*, 895 F.2d at 1487 (finding that because "there is only one contention of direct sexual propositioning, the propositioning of Conn by Stock, and that was confessed to be a minor incident in which [the plaintiff's supervisor] played no role," the case "is different from those cases where sexual harassment made out a claim for intentional infliction of emotional distress"). Neither can we find that any Defendant's actions were so "blatantly abhorrent" that they rise to the level of IIED. *See, e.g.*, *Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 465 (E.D. Pa. 2013) (granting summary judgment on plaintiff's IIED claim against her coworker where the evidence showed that he "would put his hands around her at work, flip her upside down, and describe different sexual activity positions to her," as well as "sexually proposition[ ] her, engage[ ] her in sexually explicit conversations, and show[ ] her pornographic images," but never retaliated against her for reporting this conduct); *Rorrer*, 712 F. Supp. 2d at 439 (granting summary judgment to a coworker defendant, who frequently stared at the plaintiff's breasts, had suggestively asked the plaintiff to bend over, and who held a knife to her breast, because this evidence was insufficient to support a claim for intentional infliction of emotional distress); *Bowersox v. P.H. Glatfelter Co.*, 677 F. Supp. 307, 311 (M.D. Pa. 1988) ("If the only allegations supporting [the plaintiff's] claim for intentional infliction of emotional distress were those concerning [her immediate supervisor's] sexual harassment of her, the court would be forced to" dismiss her IIED claim because although the supervisor's conduct — including statements about his sexual virility, his outings to strip joints, the sexual performance of other female employees, the plaintiff's ability to have sex after surgery, and her sexual performance, and also including his display of sexually explicit posters and newspaper clippings and his placing hands in his pants in front of her — was "insulting, undignified, annoying, and perhaps representative of the 'rough edges of our society,'" it did not "constitute the type of extreme and outrageous conduct" needed for an IIED claim); *cf. Pryor v. Mercy Catholic Med. Ctr.*, No. CIV. A. 99–0988, 1999 WL 956376 at *1, *3 (E.D. Pa. Oct. 19, 1999) (allowing IIED claim to go forward against plaintiff's direct supervisor, who was also her treating psychiatrist, where the physician subjected her to "physical force and the display of genitalia, foundling, [sic] and masturbation").

2022 WL 758991, at *36 (alterations in original).

**V.      CONCLUSION**

For the reasons discussed above, Muthard has failed to sufficiently plead a plausible IIED claim.[6] Therefore, the Court grants the Motion to Dismiss the IIED claim without prejudice to Muthard filing an amended complaint.[7]

A separate Order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge

---

[6]      Because Muthard failed to include sufficient allegations to show extreme and outrageous conduct, the Court has not addressed the factual or legal sufficiency of her allegations about retaliation or suffering extreme emotional distress.

[7]      *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile"). Here, Muthard requested leave to amend the Complaint if the Court dismissed the IIED claim. *See* Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss at 16, ECF No. 12. Should Muthard file an amended complaint, she should be cognizant of the necessary factual allegations to sufficiently plead all elements of an IIED claim.