IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLE MUTHARD | : CIVIL ACTION |
| : | |
| v. | : |
| : | |
| PENNSYLVANIA LIQUOR CONTROL | : |
| BOARD, *et al.* | : NO. 23-3387 |

MEMORANDUM OPINION

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                                                 June 10, 2025

Plaintiff has filed an employment discrimination action against the Pennsylvania Liquor Control Board ("Defendant" or "LCB") and Joseph Puhalla alleging that she was subjected to sexual harassment by way of a hostile work environment, a retaliatory hostile work environment, retaliation, and post-employment retaliation. Defendant has filed a motion for summary judgment and Plaintiff has responded to it. Plaintiff has withdrawn her claims against Puhalla.[1] As explained below, Defendant's motion is granted with respect to Plaintiff's retaliation claim, but otherwise denied.

I.     FACTUAL BACKGROUND[2]

By November 2022, when the relevant events took place, Plaintiff had worked for Defendant for approximately 7.5 years and had obtained the title of Store Assistant Manager 2 at

---

[1] Plaintiff brought civil rights claims against Joseph Puhalla in his official capacity. Puhalla has moved for summary judgment based upon Eleventh Amendment immunity grounds. Rather than respond to that argument, Plaintiff has chosen to withdraw all of her claims against Puhalla. Hence, this opinion only considers Plaintiff's employment discrimination claims against Defendant, her former employer. The implementing order will afford Puhalla relief since Plaintiff no longer pursues her claims against him.

[2] The court's scheduling order directed that, prior to any party filing a motion for summary judgment, the parties were to meet, confer and produce a joint statement of stipulated material facts. Defendant failed to meet with Plaintiff before filing its initial motion, which was denied without prejudice for failure to comply with the court's requirements. Upon refiling its motion, Defendant stated that Plaintiff only agreed to stipulate to two facts as undisputed. The court regrets that the parties could not comply fully with its directions.

  As required by the summary judgment standard, the court's background portrays the evidence in the light most favorable to Plaintiff, the nonmoving party. Unless a particular fact is salient, the court will not cite to the record, inasmuch as the parties are well aware of its contents.

Defendant's store located in Whitehall Township, Pennsylvania. As part of her work duties. Plaintiff supervised a Clerk named Sean Yingling. On November 6, 2022, Plaintiff organized a retirement party for a former colleague at a bar; the party was neither on Defendant's property nor paid for by Defendant. At the party, Yingling loudly addressed Plaintiff in a vulgar, offensive manner and asserted that she had ruined his life, because she would not enter into a romantic relationship with him. That evening, Yingling sent Plaintiff numerous vulgar and sexually harassing text messages, despite Plaintiff telling him not to communicate with her. Additionally, while intoxicated that evening, Yingling called Plaintiff and left a threatening voicemail.[3]

The next day, Plaintiff complained about Yingling's conduct to her immediate supervisor, George Parsons. She told Parsons that Yingling had addressed her in a vulgar, abusive, and threatening manner. The same day, Parsons called the District Manager, Joseph Puhalla, and recounted what Plaintiff had told him.

On November 10, 2022, four days after the retirement party incident, Puhalla met with Parsons and Plaintiff to discuss Yingling's conduct at said party. Plaintiff told Puhalla that Yingling was harassing her, texting her, and acting out. Plaintiff relates that Puhalla responded that there was nothing he could do about Yingling's conduct. Contrariwise, Parsons and Puhalla both testified that, going forward, they attempted to arrange the schedule so that Plaintiff and Yingling would not work in the store together. Despite their assertion, the store's work schedules for the relevant weeks show that Plaintiff and Yingling, in fact, worked together for 9 days from November 7 to 23, 2022. Plaintiff further states that, upon Puhalla's request, she sent Yingling's offensive text messages and voicemail to him. At his deposition, Puhalla conceded that the text

---

[3] The court will not repeat the vulgar language used by Yingling, in his intoxicated state. The parties all had access to the text messages and voicemail sent that evening.

2

messages were sexually harassing.[4]

Parsons and Puhalla met with Yingling that very day. Yingling admitted to them that he had been intoxicated at the retirement party, directed profanity toward Plaintiff and left a voicemail on her phone. Neither Puhalla nor Parsons questioned Yingling about the text messages he had sent the evening of the retirement party.

On November 16, 2022, ten days after the retirement party, Yingling and Plaintiff had an encounter in the back room of the Whitehall Township store. The parties dispute precisely what occurred there; however, Plaintiff maintains that Yingling was aggressive and loudly insulted her moral character.[5] She also claims that the store security guard, Macey Turnicky, witnessed the event and came to Plaintiff's assistance because she appeared frightened and Yingling was loud, aggressive and red-faced. Turnicky prepared a statement about what she witnessed, which Plaintiff forwarded to Parsons and Puhalla.[6] Turnicky stated that, throughout the month of November 2022, she observed that Yingling would stare at Plaintiff, walk near her, grunt angrily at her or mutter under his breath while walking near her.

The next day, November 17th, Puhalla visited the Whitehall store and Plaintiff recounted what had happened the day before in the back room. Plaintiff claims that Puhalla told her she was the aggressive one during the November 16th incident, causing her to leave the area crying.[7] That same day, Plaintiff submitted a resignation letter, to be effective December 1, 2022. Plaintiff says Puhalla laughed at her when she tendered her resignation letter.

On November 18, 2022, after contacting the State Employee Assistant Program, Plaintiff

---

[4] The court notes that, at his deposition, Puhalla claimed he was first viewing the text messages at issue. However, he was shown an email he received from Plaintiff on November 18, 2022 with the text messages attached. After Puhalla read the text messages, he admitted that they were sexually harassing. Puhalla Dep. at 35.
[5] The court will not repeat the vulgar, demeaning language Plaintiff alleges that Yingling directed toward her.
[6] Defendant omits mentioning Turnicky's statement in its recitation of the facts.
[7] Defendant excludes what Puhalla said to Plaintiff from its summary of the November 17th meeting.

3

attempted to withdraw her resignation. Puhalla told her he would look into the matter on November 21. Plaintiff claims that, on November 22, Puhalla verbally refused her attempt to withdraw her resignation, because she had caused problems at the Whitehall Township store. The next day, Plaintiff saw that Yingling was there and immediately left work.

About two weeks later, Plaintiff was hired as a security guard by Allied Universal ("Allied"). Allied provided security at several businesses, including Defendant's stores. Allied assigned Plaintiff to work at one of Defendant's stores that Puhalla oversaw. Puhalla expressed the desire to remove Plaintiff, because "she was involved in too much drama." On December 8, 2022, Puhalla directed Sean Oldfield, an LCB Executive Assistant, to contact Allied and request that Plaintiff be barred from working at any of Defendant's stores, because she had left on bad terms; Oldfield did so. Allied eventually barred Plaintiff from working at any of Defendant's stores. Oldfield's email to Allied does not mention any contractual bar. Nevertheless, Defendant claims that Plaintiff was barred from working at its stores because its contract with Allied specified that no Allied security guard could work at Defendant's stores, if they had worked for Defendant in the previous six months.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party. *Secretary, United States Dept. of Labor v. American Future Systems, Inc.*, 873 F.3d 420, 424 (3d Cir. 2017). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.* 477 U.S.

242, 251-52 (1986). The court does not make credibility determinations or weigh the evidence. *Secretary, United States Dept. of Labor*, 873 F.3d at 424.

### III.    DISCUSSION

Title VII of the Civil Rights Act of 1964 states: "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The statue also has an anti-retaliation provision. 42 U.S.C. § 2000e-3(a). This provision is violated when an employer retaliates against an employee who, *inter alia*, has opposed an employment practice made unlawful by Title VII. *Id.*

Plaintiff alleges that Defendant violated Title VII by creating or permitting a hostile work environment, a retaliatory hostile work environment, retaliation, and post-employment retaliation. This court finds that Defendant is entitled to summary judgment with respect to Plaintiff's retaliation claim, but not her three other claims.

**A.    Sexual Harassment via Hostile Work Environment**

In order to establish a Title VII hostile work environment claim, Plaintiff must demonstrate: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) *respondeat superior* liability exists. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). The first four elements establish a hostile work environment and the fifth determines employer liability. *Id.* If the harassing employee is not a supervisor, the employer is liable only if it was negligent in controlling work conditions. *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013).

5

Defendant argues that Plaintiff has failed to marshal any evidence of elements one, two, four and five. Def.'s Mem. of Law at 4-9. This court disagrees; additionally, since Defendant does not challenge element three, the court presumes it concedes there is evidence to support that element.

It is apparent that, Plaintiff has accumulated evidence from which a jury could find that Yingling's conduct toward her, which was vulgar, demeaning, intimidating, and based upon Plaintiff's sex, was intentional and resulted in discrimination. Indeed, at his deposition, Puhalla acknowledged that Yingling's November 6 text messages to Plaintiff constituted sexual harassment. Puhalla Dep. at 35. Furthermore, Yingling's November 16 conduct in the store's back room appeared to subject Plaintiff to discrimination based on her sex, which Turnicky witnessed. A jury could so find.

Next, Yingling's ongoing conduct, from November 6, through November 16, in the store's back room and, according to Turnicky, until November 23 in the store, could be found to be pervasive. The court notes that, despite Parson and Puhalla stating that they would attempt to keep Plaintiff and Yingling apart, the store's work schedules from November 7 to November 23 scheduled them to work together on 9 of the days, including November 23, the day Plaintiff abruptly left work. Pl. Br. in Opposition, Ex. 7 at 3-5. Hence, Yingling was afforded ample opportunity to continue his harassment of Plaintiff, which Turnicky witnessed. Again, that is evidence from which a jury could find that Yingling's conduct was pervasive.

In addition, Yingling's conduct would detrimentally affect a reasonable person in like circumstances. No reasonable person could stoically tolerate Yingling's abusive conduct for the 9 workdays Plaintiff was exposed to him. It is apparent that Yingling sought to vulgarly insult and intimidate Plaintiff to make her feel inferior, because he perceived entitlement to her affection;

that is, he discriminated against her because of her sex. A reasonable person in Plaintiff's circumstances would be detrimentally affected by such conduct.

Finally, the failure of Parsons and Puhalla (both of whom were Plaintiff's and Yingling's superiors) to actually prevent Plaintiff from being scheduled to work with Yingling could be found by a jury to be evidence of Defendant's negligence. Additionally, Plaintiff's testimony that Puhalla told her that he could do nothing after the November 6 incident, considered her the aggressor on November 16 and laughed at her when she tendered her resignation could certainly be deemed negligence, or worse.[8]

**B.      Retaliatory Hostile Work Environment**

In order to establish a Title VII retaliatory hostile work environment claim, Plaintiff must demonstrate: (1) she suffered intentional discrimination because of her protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) *respondeat superior* liability exists. *Komis v. Sect. of U.S. Dept. of Labor.*, 918 F.3d 289, 293 (3d Cir. 2019) (citation omitted).

Plaintiff maintains that Defendant retaliated against her, after she complained about

---

[8] The parties devote attention to whether Plaintiff can survive summary judgment with respect to whether she was constructively discharged. *See* Def.'s Mem. of Law at 12-13; Pl. Br. in Opposition at 11-13. However, the parties ignore whether Plaintiff is required to make such a showing. If this matter does not settle, this is a topic for the parties to address in their final pre-trial memoranda.
  Nevertheless, a constructive discharge exists when the plaintiff's working conditions become so intolerable that a reasonable person in the plaintiff's position would have felt compelled to resign. *Penna. State Police v. Suders*, 542 U.S. 129, 141 (2004). Plaintiff has presented evidence from which a jury could properly find constructive discharge: Yingling's sexually harassing, intimidating and otherwise offensive conduct throughout November 2022, Defendant's failure to separate Plaintiff from Yingling during working hours, and Puhalla's allegedly dismissive treatment of Plaintiff's complaints concerning Yingling. Indeed, Yingling's conduct alone, since it was so egregious, could constitute the requisite intolerable circumstances. *See Shamsuddi v. Classic Staffing Services*, 504 F. Supp. 3d. 327, 335 (E.D. Pa. 2020) (holding that one voicemail message the defendant's employee left for the plaintiff which contained multiple uses of a particularly offensive racial slur was sufficient to establish an intolerable work environment for purposes of constructive discharge). Hence, Defendant cannot be granted summary judgment concerning whether Plaintiff suffered a constructive discharge.

Yingling's offensive conduct, from November 6, 2022, until November 23, 2022, the last day she worked for Defendant. Defendant argues that Plaintiff cannot prevail because her hostile work environment claim lacks merit and her complaints about Yingling's conduct are not actionable under Title VII. Def.'s Mem. of Law at 9-10. This court disagrees.

This court has already explained that Plaintiff has presented sufficient evidence to allow her hostile work environment claim to go to a jury. *See supra* Section III.A. Hence, Defendant's first argument lacks merit.

Defendant maintains that Plaintiff's complaint about Yingling's conduct is not actionable, because she only complained about his out-of-work offensive, sexually harassing conduct on November 6, 2022. Putting aside for purposes of this motion whether Yingling's conduct on November 6, 2022 is actionable because it took place outside the workplace, Plaintiff also complained to Parsons and Puhalla about Yingling's workplace conduct after November 6, 2022, including his threatening workplace conduct on November 16. That conduct is sufficient to allow a jury to decide whether Defendant's actions after November 16, which include Puhalla ignoring the threatening, sexually harassing text messages and voicemail from Yingling that Plaintiff had forwarded to him by email, constituted unlawful retaliation, because she complained about Yingling's conduct. Hence, Plaintiff's retaliatory hostile work environment claim survives summary judgment.

**C.    Retaliation**

To make a *prima facie* case of retaliation, Plaintiff must demonstrate that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between her protected activity and the adverse employment action. *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (citation omitted). If Plaintiff can carry

8

that initial burden, the burden shifts to Defendant to proffer a non-retaliatory reason for the adverse employment action.  *Id.*  If Defendant carries that burden, Plaintiff must them provide evidence that the proffered reason was false, *i.e.*, was a pretext, and that the real reason for the adverse employment action was retaliation.  *Id.* (citations omitted).

In the complaint, Plaintiff accuses Puhalla of retaliating against her without specifying what conduct was retaliatory.  Complaint at ¶ 69.  Defendant maintains that Plaintiff's retaliation claim relies upon Puhalla's decision not to rescind her resignation and that, based on authority from this district, that decision cannot constitute an adverse employment action.  Def.'s Mem. of Law at 11-12.  Plaintiff's Brief in Opposition does not refute Defendant's argument, because she has failed to address it.

As Defendant notes, there is support in this district for the principle that an employer's failure to rescind an employee's resignation cannot constitute an adverse employment action.  *Henderson v. Mercy Catholic Medical Center*, Civ. A. No. 17-1271, 2018 WL 3344655, *6 (E.D. Pa. July 9, 2019) (collecting cases); *see also Burns v. USI Insurance Services, LLS*, Civ. A. No. 20-5304, 2022 WL 824101, *5 (E.D. Pa. Mar. 18, 2022) (citing *Henderson* and applying it to an Americans with Disabilities Act case).  Inasmuch as Plaintiff has declined to identify any contrary authority, and there is authority to support Defendant's position, this court will grant summary judgment on Plaintiff's retaliation claim, because she has failed to identify a retaliatory adverse employment action.

D.     **Post-Employment Retaliation**

Plaintiff maintains that Defendant retaliated against her after resignation, because Defendant caused her new employer, Allied, to prevent her from working as a security guard at Defendant's stores.  Defendant maintains that it did not retaliate against Plaintiff but, instead,

simply asked Allied to enforce a provision of the contract it had with Allied. Def.'s Mem. of Law at 18. This court finds that the evidence Plaintiff has obtained would permit a jury to conclude that Defendant's current reliance upon its contract with Allied is a pretext.

As explained *supra* Section III.C., a Title VII retaliation claim initially requires a Plaintiff to make a *prima facie* case; if she can do so, Defendant must proffer a non-retaliatory reason for its action; if it can, then Plaintiff must seek to demonstrate that Defendant's proffered reason was a pretext. Herein, Defendant defends against Plaintiff's claim by arguing that its contract with Allied was the non-retaliatory reason it intervened in her employment with Allied. However, the December 8, 2022 email Oldfield (Defendant's employee) sent to Allied – at Puhalla's direction – did not identify the contract between Defendant and Allied as the reason to remove Plaintiff from Defendant's stores. Instead, Oldfield told Allied that Plaintiff had "left on bad terms and was not an appropriate candidate for any of [Defendant's] locations." Pl. Br. in Opposition, Ex. 13 at 1. On its face, this email indicates that Defendant's newly proffered reason is a pretext. A jury may determine otherwise but, at this stage of the litigation, there is sufficient evidence from which the jury could find that Defendant's newly-found reliance on its contract with Allied is pretextual. Therefore, Plaintiff's post-retaliation claim can survive summary judgment.

An implementing order follows.